UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| C.B., *by and through his parents, C.B. and J.B.* and C.B. and J.B., individually and in their own right,<br>                    Plaintiffs,<br><br>         v.<br><br>NAZARETH AREA SCHOOL DISTRICT,<br>                    Defendant. | :<br>:<br>:<br>:<br>:    No.   5:24-cv-0844<br>:<br>:<br>:<br>: |

_____

**O P I N I O N**
**Nazareth Area School District's Motion for Judgment on the Administrative Record, ECF No. 16 – Denied**
**C.B. and Parents' Motion for Judgment on the Administrative Record, ECF No. 17 – Granted**

**Joseph F. Leeson, Jr.**                                          **January 6, 2025**
**United States District Judge**

## I.    INTRODUCTION

Before the Court are Cross-Motions for Judgment on the Administrative Record with respect to a claim that C.B. was denied a free and appropriate public education ("FAPE") by Nazareth Area School District under the Individuals with Disabilities Education Act ("IDEA"). C.B. brings this claim through his parents who also sue in their own right.

C.B. is a child with, *inter alia*, autism, apraxia of speech, and ADHD.  These conditions have had a significant detrimental effect on his education.  To address these conditions, C.B. has received both public and private services designed to mitigate his developmental delays.  At first, he made progress.  However, as that progress began to falter and as new behaviors emerged, Nazareth's approach trended toward increasingly restrictive levels of placement.  The parents resisted.  Things came to a head in May of 2023 when the parents pulled C.B. from the school as his placement trended toward full-time Autistic Support.

The parents' disagreement took the form of a due process hearing complaint which generally argued that the school's approach to C.B.'s education was fundamentally flawed. That complaint was assigned to Hearing Officer Cathy Skidmore ("HO") who found that Nazareth indeed failed to provide C.B. with an FAPE and awarded compensatory education. Both parties seek Judgment on the Administrative Record. Nazareth asks that the HO decision be reversed while C.B. and his parents ask that the decision be affirmed and enforced. For the reasons that follow, the Court grants Plaintiffs' Motion and denies Nazareth's.

## II.    BACKGROUND

### A.    Factual Background[1]

*C.B. is a disabled child. As his conditions became manifest and his development became delayed, his parents sought public and private services to help their child.*

At the time of this controversy, C.B. was a student in Nazareth Area School District. ECF 13-3, Hearing Officer's Finding of Facts ("HO FOF") ¶ 1; ECF No. 13-9 ("Transcript Vol. 1"), N.T. 52:17-53:17. C.B. has been diagnosed with Autism Spectrum Disorder (ASD), Childhood Apraxia of Speech (CAS), dyspraxia, Attention Deficit Hyperactivity Disorder (ADHD), mixed expressive receptive language delay, and sensory processing disorder. HO FOF ¶ 2; Transcript Vol. 1, N.T. 55:15-21. For these conditions, C.B. has received private occupational, physical, and speech therapy as well as "wrap-around" behavioral services. HO FOF ¶ 3; Transcript Vol. 1, N.T. 56:10-17. Prior to entering Nazareth Area School District, in December of 2020, C.B. was enrolled in an early intervention program administered by the local

---

[1]    The following facts were determined by Hearing Officer Skidmore and therefore are presumed to be prima facie correct. *See Montgomery Cnty. Intermediate Unit No. 23 v. A.F. ex rel. D.F.*, 506 F. Supp. 3d 293, 302 (E.D. Pa. 2020). The Court supplements the HO's finding of facts with cites to the record as it deems appropriate.

Intermediate Unit ("IU") where he received itinerant teacher services, occupational therapy, and speech therapy. HO FOF ¶ 4; ECF No. 13-11 ("LEA Exs."), S-1 at 4. A 2021 reevaluation report by the IU concluded that C.B. demonstrated cognitive, communication, social and emotional, and adaptive developmental delays. HO FOF ¶ 6; LEA Exs., S-1 at 9-13.

       1.     C.B.'s 2021-22 Kindergarten School Year

          a.     Before the School Year

*Building off the IU's services, Nazareth and C.B.'s parents worked together to develop an Individualized Education Program ("IEP") to address C.B.'s education needs during his kindergarten year.*

C.B. was enrolled as a kindergartener in Nazareth during the 2021-22 school year. HO FOF ¶ 18; Transcript Vol. 1, N.T. 60:12-18. Prior to the start of the school year, Nazareth performed a reevaluation report of C.B. HO FOF ¶ 19; LEA Exs., S-2. The report found that C.B. was eligible for special education under the categories of autism and speech and/or language impairment. HO FOF ¶ 26; LEA Exs., S-3 at 17. The same report identified C.B.'s needs as: 1) significant communication, socialization, and daily living skill developmental delays; 2) inattention and distractibility; 3) functional communication; 4) expanded use of the augmentative and alternative communication ("AAC") device; 5) improvement of intelligible speech. *Id*. The report also included recommendations to the IEP team. LEA Exs., S-3.

Nazareth developed an IEP in July of 2021. HO FOF ¶ 28; LEA Exs., S-4. That IEP proposed, *inter alia*, placing C.B. in full-time Autistic Support. HO FOF ¶ 31; LEA Exs., S-4 at 37. The parents rejected this placement, feeling that C.B. was academically capable of participating in a regular education classroom. HO FOF ¶ 32; LEA Exs., S-5 at 3. A second IEP meeting was then convened for August of 2021. HO FOF ¶ 33; LEA Exs., S-6. The revised IEP

placed C.B. in itinerant learning and speech/language support.  HO FOF ¶ 33; LEA Exs., S-7 at

33.  The parents accepted this Notice of Recommended Educational Placement ("NOREP")[2].

HO FOF ¶ 35; LEA Exs., S-8.

                    b.          During the School Year

*C.B. showed signs of initial progress in the Fall of 2021.  However, in the Spring of 2022,*

*certain behaviors became manifest and new strategies were undertaken to address his*

*behavioral needs.*

C.B. made initial progress in some limited areas during the 2021-22 school year.  In

December of 2021, the IEP was revised to reflect this progress.  HO FOF ¶ 36; LEA Exs., S-9.

However, the IEP team met in March 2022 to address new behaviors. HO FOF ¶ 38; ECF No.

13-8 ("Transcript Vol. 2"), N.T. 599:3-19.  Those behaviors included making non-word

vocalizations with a neutral or agitated expression; making verbal "no" statements; dropping his

body to the floor; and using fist to contact surfaces.  HO FOF ¶ 39; LEA Exs., S-11.  As a result

of that meeting, a Functional Behavior Assessment ("FBA") was performed on C.B.  HO FOF ¶

38; LEA Exs., S-11.

Another IEP meeting was convened in May of 2022 after completion of the FBA.  HO

FOF ¶ 42; LEA Exs., S-11.  The IEP produced identified C.B.'s needs to include improving: 1)

fine and visual motor skills by using legible handwriting; 2) independently following instructions

and attending to tasks; 3) receptive language skills; 4) expressive language skills; 5) ability to

---

[2]      "A NOREP is the customary form of notice which Pennsylvania local educational agencies use to inform a parent of its proposed changes to a child's IEP and requests parental consent for the proposed action. These notices advise that the local educational agency will implement the proposed changes unless the parent indicates disapproval of the recommended action, requests an informal meeting or mediation, or files a due process complaint regarding the change." *Jenn-Ching Luo v. Owen J. Roberts School District*, No. CV 14-6354, 2024 WL 5082320, at *3 n.5 (E.D. Pa. Dec. 11, 2024).

expressively identify actions; 5) ability to receptively and expressively identify prepositions; and
6) ability to read program-based sight words.  HO FOF ¶ 44; LEA Exs., S-11 at 40.  Identified
goals consisted of: 1) improving fine and visual motor skills by using legible handwriting; 2)
independently expressing yes/no verbally or using the AAC device; 3) requesting a desired
object (either verbally or using AAC device) using at least two words; 4) independently
expressing the function (verbally or using AAC device) for a number of objects; 5) following
directions to initiate engagement; 6) following directions to make classroom transitions; 7)
receptively and expressively identifying different prepositions; and 8) reading 100 program
based words with 80% accuracy.  HO FOF ¶ 45; LEA Exs., S-11 at 52-77.

C.B.'s placement continued as itinerant learning and speech/language support with
speech therapy and occupational therapy.  HO FOF ¶ 48; LEA Exs., S-11 at 85-88.  The IEP also
recommended that a Positive Behavior Support Plan be included in the May 2022 IEP.  HO FOF
¶ 47; LEA Exs., S-11.  While the IEP contained a "Guide to AAC Device Programming and
Use," it did not require modeling of the device.  HO FOF ¶ 49; LEA Exs., S-11 at 90.
Notwithstanding, C.B. performed academically well over the 2021-22 school year.  HO FOF ¶
50.

### 2.    C.B.'s 2022-23 First Grade School Year

*Beginning in the Fall of 2022, C.B.'s behavioral problems worsened and tension between
Nazareth and the Parents grew as the parties disagreed on how to address these problems.  This
culminated in the late Spring of 2023 when the Parents disenrolled C.B. from Nazareth in
response to the increasing levels of support implemented by the IEPs.*

a.    Fall of 2022

C.B.'s problematic behaviors began to worsen soon after the start of the 2022-23 school year.  HO FOF ¶ 52; Transcript Vol. 1, N.T. 83:2-84:13; LEA Exs., at S-12.  C.B. developed new problematic behaviors while his existing problematic behaviors grew worse.  HO FOF ¶ 52; Transcript Vol. 1, N.T. 83:25-84:13; ECF No. 13-7 ("Transcript Vol. 3"), N.T. 887:17-888:18; 893:19-895:6.  To address this change in behavior, the IEP team convened in the Fall to discuss the new behaviors and strategies on how to address them.  HO FOF ¶ 55; LEA Exs., at S-12 and S-13.

b.    Spring of 2023 and C.B.'s Disenrollment

C.B. did not do better in the Spring.  He was sick in January of 2023 and struggled to transition back to school.  FOF ¶ 57; Transcript Vol. 1, N.T. 109:16-20.  The IEP team met in January and February of 2023 to discuss, *inter alia*, the use of C.B.'s AAC device, his return to school post-illness, and his troubling behavior.  HO FOF ¶ 58; Transcript Vol. 1, N.T. 109:21-110:7; LEA Exs., S-14, S-15.  At the meeting, it was decided that C.B. would stop using the AAC device at school.  HO FOF ¶ 59; Transcript Vol. 1, N.T. 302:5-20; Transcript Vol. 3, N.T. 686:12-687:10.  However, at the March 2023 IEP team meeting, the team reversed course and resumed the use of the AAC device.  HO FOF ¶ 60; Transcript Vol. 1, N.T. 312:24-313:16.  The IEP team and the Parents also discussed modifying C.B.'s work but ultimately could not reach an agreement on that front.  HO FOF ¶ 60; Transcript Vol. 2, N.T. 573:3-16; Transcript Vol. 3, N.T. 801:10-803:7.  The Parents were told such modifications would impact C.B.'s grades and/or could only be made in Autistic Support.  HO FOF ¶ 16; Transcript Vol. 1, N.T. 96:14-97:4; ECF No. 13-6 ("Transcript Vol. 4"), N.T. 991:6-992:5.

The most important development to come out of the March 2023 IEP meeting was the March 2023 NOREP. First, the NOREP increased C.B.'s level of support to Supplemental Learning Support. HO FOF ¶ 61; LEA Exs. S-48. Second, the NOREP included an intention to revisit full-time Autistic Support placement to meet C.B.'s educational and behavioral needs. *Id*. The Parents disapproved of this NOREP and requested a facilitator at the May 2023 IEP team meeting. *Id*.

At the May 2, 2023, meeting, Autistic Support was once again discussed but no agreement was reached on a new IEP. HO FOF ¶ 64; Transcript Vol. 3, N.T. 857:4-14; LEA Exs., S-18. The IEP team was set to reconvene on May 15, 2023. HO FOF ¶ 64; LEA Exs., S-17. However, before then, Nazareth was informed that C.B. was being withdrawn from the District, effective at the end of the school year. HO FOF ¶ 65; LEA Exs., S-17. Notwithstanding, Nazareth informed the Parents that the IEP team would nevertheless reconvene on May 15th. *Id*. On May 10th, the Parents informed Nazareth that C.B. was now enrolled at a cyber charter school and disenrolled from Nazareth. HO FOF ¶ 66; LEA Exs., S-22. Nazareth nevertheless reconvened on May 15, 2023, without the Parents or facilitator, and finalized a new IEP which provided for autistic and speech/language support at a full-time level. HO FOF ¶¶ 67, 73; Transcript Vol. 3, N.T. 834:20-835:17; LEA Exs., S-20.

        3.     Facts Relevant to the Court's Findings and the AAC Device
                      Generally

The use and utility of the augmentative and alternative communication device is central to this controversy. While C.B. uses some verbal speech, he uses the AAC device to assist with his communication. HO FOF ¶ 7; Transcript Vol. 1, N.T. 209:3-23. A child's communication skills are intertwined with their behavior because behavior is a form of communication. HO FOF ¶ 8; Transcript Vol. 3, N.T. 549:9-550:7. C.B.'s private speech therapist "models" the

AAC device for him by showing him how to use it and then providing C.B. with opportunities to use the device.  Transcript Vol. 1, N.T. 222:3-223:3.  Successful use of the AAC device requires consistent modeling throughout the day with various communication partners.  HO FOF ¶ 10; Transcript Vol. 1, N.T. 234:16-235:21.

Nazareth's speech/language therapist provided some training for the staff working with C.B. on how to model and use the AAC device.  HO FOF ¶ 15; LEA Exs., S-27. However, modeling did not consistently occur throughout the day and the AAC device was often left unused or used for simple bits of communication.  HO FOF ¶ 15; Transcript Vol. 1, N.T. 248:16-249:4; Transcript Vol. 3, N.T. 824:5-19.

### B.     Procedural Background

On June 13, 2023, C.B., by and through his parents, filed a due process hearing complaint requesting that the May 16, 2023, NOREP and proposed IEP be deemed invalid and seeking an award of compensatory education for the 2021-22 and 2022-23 school years.  *See* ECF No. 13-13.  The matter was assigned to Hearing Officer Cathy Skidmore who conducted sessions in October of 2023.  *See* ECF No. 13.  On November 30, 2023, HO Skidmore found in favor of C.B. and his parents and awarded compensatory education for the 2021-22 and 2022-23 school years.  *See* ECF No. 13-3.  On February 27, 2024, Plaintiffs filed the instant action seeking enforcement of the HO decision, establishment of compensatory education, and reimbursement of attorneys' fees and costs.  *See* ECF No. 1.  On February 29, 2024, Nazareth filed a complaint seeking reversal of the HO decision.  *See* ECF No. 1, at Docket Number 24-866.  The cases were consolidated into the above captioned matter.  *See* ECF No. 7.  On July 31, 2024, the parties filed Cross-Motions for Judgment on the Administrative Record.  *See* ECF Nos. 16, 17.  The matters are fully briefed and ready for disposition.

## III.    LEGAL STANDARDS

### A.    Review of Agency Decision under the IDEA – Review of Applicable Law

Courts reviewing an appeal from a state agency's decision under the IDEA apply a

"modified de novo standard of review." *See Montgomery Cnty. Intermediate Unit No. 23 v. A.F.*

*ex rel. D.F.*, 506 F. Supp. 3d 293, 302 (E.D. Pa. 2020) (quoting *D.K. v. Abington Sch. Dist.*, 696

F.3d 233, 243 (3d Cir. 2012)).  Accordingly, courts "must give 'due weight' to the findings in the

administrative proceeding (also known as a 'due process hearing' in IDEA parlance)." *See id.*

(quoting *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010)).  In practice, the "due

weight" standard instructs that the "factual findings from the administrative proceedings are to

be considered prima facie correct." *See id.* at 302-03 (quoting *D.S.*, 602 F.3d at 564).  A court

must accept the credibility determinations of the agency's hearing officer "unless the non-

testimonial, extrinsic evidence in the record would justify a contrary conclusion." *See id.*

Should a court find that a contrary conclusion is warranted, "it is obliged to explain why." *See*

*id.*

"With regard to conclusions of law, the review is plenary." *See id.* (quoting *Rose Tree*

*Media Sch. Dist. v. M.J. ex rel. M.J.*, No. 18-cv-1063, 2019 WL 1062487, at *3 (E.D. Pa. Mar. 6,

2019)).  "[T]he party challenging the administrative decision bears the burden of persuasion

before the district court as to each claim challenged." *See id.*  (quoting *Ridley Sch. Dist. v. M.R.*,

680 F.3d 260, 270 (3d Cir. 2012)).

### B.    Claim for Denial of FAPE under IDEA – Review of Applicable Law

The IDEA was drafted to "ensure that all children with disabilities have available to them

a free appropriate public education that emphasizes special education and related services

designed to meet their unique needs . . . ." *See* 20 U.S.C. § 1400(d)(1)(A).  In order to provide a

FAPE, a school district must offer the student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *See Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 998-999 (2017).  The Third Circuit has interpreted this standard to require that a district provide the student with a "meaningful educational benefit[] in light of the student's intellectual potential."  *See D.S.*, 602 F.3d at 557 (quoting *Chambers v. Phila. Bd. of Educ.*, 587 F.3d 176, 182 (3d Cir. 2009)).  The IDEA contemplates that the act of developing the IEP "will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians."  *See Endrew F.*, 137 S. Ct. at 999 (citing *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 208-09 (1982)); *see also id.* at 994 (noting IEP procedures "emphasize collaboration among parents and educators").

The educational program resulting from an IEP must be "appropriately ambitious in light of [the child's] circumstances."  *See id.* at 1000.  Additionally, the IDEA contemplates that states will establish:

> procedures to ensure that, to the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled and that special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature and severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily . . . .

*See Oberti ex rel. Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1213 (3d Cir. 1993).  This is sometimes referred to as the "least restrictive environment" (LRE) requirement.  *See id.* at 1209 n.6.

Determining a school district's liability for a violation of the IDEA is a two-part inquiry: "(1) Has the school district complied with the procedures set forth in IDEA?; and (2) [h]as the school district fulfilled its obligation to provide the student with a FAPE?"  *See A.F.*, 506 F.

Supp. 3d at 304 (quoting *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010)).  Put another way, the second part of the inquiry asks whether the student's IEP was "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *See Endrew F.*, 137 S. Ct. at 998-999.

## IV.    ANALYSIS

Nazareth, as the party challenging the administrative decision, holds the burden of persuasion on each claim.  *See Ridley*, 680 F.3d at 270.  It offers three reasons for reversing the HO's decision.  The Court addresses each.

### A.    Incorrect Legal Standard: Failure of Programming vs. Failure to Implement

First, Nazareth argues that the HO erred by using an incorrect legal standard in determining that C.B. was denied an FAPE.  The Court reviews the HO's "legal conclusions under the *de novo* standard."  *Cent. Bucks Sch. Dist. v. Q. M.*, No. CV 22-1128, 2022 WL 4134730, at *15 (E.D. Pa. Sept. 12, 2022).

There is a sharp point of disagreement as to the nature of the Parents' claim.  Nazareth casts the claim as a failure to *implement* the IEP while the Parents cast their complaint as a failure of *programming*.  Nazareth's argument is as follows.  The HO determined that Nazareth "proposed and implemented an IEP that was directly responsive to [C.B.'s] needs in most respects."  ECF No. 13-3 at 26.  However, Nazareth argues, "modeling" the AAC device was not in that IEP and so "strictly, its implementation was not required."  Def. Mot. at 6.  Instead, the IEP merely called for Nazareth to use "services and strategies" to support C.B.'s use of the AAC device.  *Id*.  Thus, the HO's decision should have addressed whether Nazareth *implemented* that aspect of the IEP, not whether Nazareth consistently implemented modeling of the AAC device.  Further, Nazareth argues, had the HO conducted the proper 'failure to implement' inquiry, she

would have concluded that C.B.'s "meaningful progress in most realms" would have suggested that Nazareth's implementation of the IEP was indeed sufficient.  *Id.* at 8.

There is an important distinction between a failure of programming and a failure of implementation claim.  A failure to implement theory claims that the existing IEP is sufficient but was not adequately put into practice.  *L.J. by N.N.J. v. Sch. Bd. of Broward Cnty.*, 927 F.3d 1203, 1211 (11th Cir. 2019) ("But even where an IEP as written may satisfy the IDEA, schools can also fail to meet their obligation to provide a free appropriate public education by failing to implement the IEP *in practice*") (emphasis in original).  In contrast, a failure of programming alleges that there was a flaw in the formation of the IEP or its content.  Programming challenges are "concerned with the IEP's substance, i.e., whether the IEP 'reasonably [is] calculated to enable the child to receive educational benefits.'"  *D.S.,* 602 F.3d at 565 (quoting *Rowley*, 458 U.S. at 207); *see also Hempfield Sch. Dist. v. S.C.*, No. CV 23-2800, 2024 WL 384918 at *17 (E.D. Pa. Jan. 31, 2024) (explaining the distinction between failure of programming and failure to implement cases.)

In their Response, the Parents focus on this distinction:

First, District asserts that modeling of the AAC device was not explicitly in the IEP, and therefore not required[]. This argument supports Parents' assertion that *the root of the issue is not failure to implement, but rather appropriateness of the programming*.

Pls. Resp. at 5 (emphasis added).  This distinction has significant legal import because the claims invoke different legal standards.  Indeed, the District argues that the thrust of this error warrants reversal.

In *Abigail P*., the Third Circuit handed down a "materiality standard" for evaluating failure to implement claims.  *Abigail P. through Sarah F. v. Old Forge Sch. Dist.*, 105 F.4th 57, 66 (3d Cir. 2024).  Under this standard, "'a party challenging the implementation of an IEP must

show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement *substantial or significant provisions* of the IEP.'" *Id.* at 65 (quoting *Houston Indep. Sch. Dist. v. Bobby R*., 200 F.3d 341, 349 (5th Cir. 2000)) (emphasis in original).

 *Abigail P.*, however, *did not* change the standard for challenges to the programming or content of an IEP.  In those claims, the reviewing authority must determine whether the district set out "an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *Endrew F.*, 580 U.S. at 403.  This is the standard the HO correctly applied.  The Parents' claim was and is still a challenge to the programming and not implementation of the IEP.  Their essential contention is that consistent modeling of the AAC *should have* been included in the IEP but was not.  They argue the effect of this omission denied C.B. an FAPE.

 Consider the averments in the original due process hearing complaint.  Therein, the Parents averred that Nazareth "failed to adequately support [C.B.'s] use of the AAC device" by, *inter alia*, "fail[ing] to provide [C.B.] with support to use the AAC device appropriately and effectively at school," failing to "adequately train" support staff on supporting C.B.'s use of the device, and being "dismissive of [C.B.]'s need of the device."  ECF No. 13-13 ¶ 4.  The HO also categorized the claims as a challenge to aspects of C.B.'s programming.  ECF No. 13-3 at 26 ("The Parents challenge several specific aspects of Student's programming over the school years at issue . . .")

 Accordingly, Nazareth's argument that the HO used the wrong legal standard warrants no relief.

B.      **Failure to Modify: Incorrect Legal Standard and Record Evidence**

Second, Nazareth argues that the HO erred in finding the District denied C.B. an FAPE by failing to modify its instruction.  More specifically, the HO found that in the Fall of 2022, C.B.'s academic struggles became such that his:

> special education program unmistakably required modification to the content of instruction[], as defined by the IDEA.   The District's refusal to do so unconditionally is irreconcilable with its obligation to provide a program for Student in the least restrictive environment appropriate, and together with unmet communication needs undoubtedly led to Student's steadily increasing behavioral challenges over the 2022-23 school year. These flaws in the programming for Student's communication and academic needs constitute a substantive denial of FAPE.

ECF No. 13-3 at 28-29 (footnote omitted).

In its Motion, Nazareth asserts two issues with this conclusion.  First, it argues that the HO erred by addressing the failure to modify claim as a substantive claim and not a procedural or failure to implement claim.  Second, notwithstanding, Nazareth argues that the HO's conclusion that Nazareth refused to modify the IEP is unsupported by the record.  The Court addresses each.

1.      The HO did not err in addressing this claim as a substantive violation[3]

Nazareth argues that "[a] refusal to make parent-requested modifications is arguably a procedural violation, not a substantive FAPE concern" because "[t]he issue involves parent participatory rights."  Def. Mot. at 14.  Thus, Nazareth argues, the HO erred when she failed to address whether the purported procedural error:

> (i) impeded the child's right to a free appropriate public education;
> (ii) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child; or

---

[3]      Again, the Court reviews the HO's legal conclusions under the *de novo* standard of review.  *See Cent. Bucks Sch. Dist.*, 2022 WL 4134730 at *15.

(iii) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii).  However, the Parents' due process complaint, insofar as it alleges a failure to modify, is a substantive and not procedural violation.  Nazareth cites *D.S. v. Bayonne* and *Colonial v. G.K.* in support of its argument.  Having reviewed the cases, the Court does not see how they support the notion that the instant failure to modify claim is procedural and not substantive in nature.

The narrow portion of *D.S. v. Bayonne* cited concerns a New Jersey regulation requiring a school district to respond to a parent's inquiry within 20 days.  *D.S.,* 602 F.3d at 565.  In *D.S.,* the defendant district's failure to address the concerned parents' letters for months was a procedural and not substantive challenge to the child's IEP rights because it regards the parents' right to have their concerns heard.  Indeed, the procedural aspects of the Act are aimed at "giving parents and guardians a large measure of participation at every stage of the administrative process."  *Rowley*, 458 U.S. at 205.

Similarly, in *Colonial*, the parents levied a procedural challenge by alleging that "because they could not subjectively 'understand' every nuance of the subjects discussed in [the child's] IEP meetings, they were denied meaningful participation."  *Colonial Sch. Dist. v. G.K. by & through A.K.,* 763 F. App'x 192, 198 (3d Cir. 2019).  That is another procedural argument because it regards the parents' ability to participate in the IEP process and not the substance of the IEP itself.  Here, the failure to modify claim is a substantive claim because it is premised on the content of the IEP and not the Parents' access to or participation in its development.

In the alternative, Nazareth appears to argue that the failure to modify claim should have been addressed as a failure to implement claim.  At the outset, the Court notes that a failure to implement claim would also be a substantive claim, not a procedural one.  *See Abigail P.,* 105 F.4th 57.  However, a failure to implement claim arises where a school fails to put the IEP into

practice.  *See L.J.*, 927 F.3d at 1211.  Here, that is not the Parents' claim.  Rather, the Parents

complain that Nazareth "refused to modify [C.B.'s] school work" to align with the use of his

AAC device.  ECF No. 13-13 ¶ 7.  In other words, the Parents complain that the programming of

the IEP should have been modified but was not.  The failure to modify denied C.B. an FAPE.

Accordingly, their complaint is not a failure to implement claim.

Notwithstanding, Nazareth argues that "the hearing officer never assessed the quality of

the IEP that resulted out of the alleged refusal [to modify]."  Def. Mot. at 10.  That argument is

addressed in the section that follows.

> 2.    The HO's conclusion that Nazareth's refusal to unconditionally
>        modify constitutes a denial of a FAPE.

To reiterate, whether Nazareth fulfilled its obligation to provide C.B. with an FAPE is a

question of fact; the factual findings of the HO are considered prima facie correct.  *See D.K. v.*

*Abington Sch. Dist.*, 696 F.3d at 244; *see also Hempfield Sch. Dist.*, 2024 WL 384918 at *18.

Nazareth argues that the HO "never reconciles how the supposed substantive FAPE

denials square with the conclusion that the IEPs were appropriate."  Def. Mot. at 10.  That

argument misconstrues the HO's finding.  This point references the HO's finding that "[d]uring

the 2021-22 school year, the District proposed and implemented an IEP that was directly

responsive to Student's needs in most respects."  ECF No. 13-3 at 26.  Thus, Nazareth implies,

the HO erred by simultaneously finding the IEP was appropriate/responsive and substantively

deficient.  However, Nazareth's argument misrepresents the HO's finding.  The HO found that

the IEP was directly responsive in "most respects."  *Id*.  Later, she elaborates that while the IEP

was responsive to C.B's academic and behavioral needs, it was not responsive to his

communication needs.  *Id*. at 28.

Nazareth's Motion also misconstrues the HO's finding as to Nazareth's failure to modify. It argues that the HO erred in determining that Nazareth refused to make modifications because it was in fact *the parents* who refused modifications.  This mischaracterizes the HO's conclusion as well.   The conclusion was that Nazareth refused to make modifications *unconditionally*. Here, the specific conditions were that the modifications would impact C.B.'s grades and could only be done in an Autistic Support setting.  Thus, Parents argue, and this Court agrees, "that penalty to Student's grades, or modifications restricted to a specific setting are, indeed, conditions."  Pls. Resp. at 9.

This is supported by the record which reflects Mr. Kise informing the Parents that if the school were to modify C.B.'s homework, the highest possible score he could receive would be 2 out of 4.  Further, Mr. Kise informed the Parents that the modifications could not be implemented unless C.B. was placed in Autistic Support.  HO FOF ¶ 16; Transcript Vol. 1, N.T. 96:16-97:4; Transcript Vol. 4, N.T. 991:20-992:5; N.T. 1029:22-1030:4. It is also supported by the testimony of Ms. Gruver, the K-12 learning support teacher at Shafer Elementary.  Transcript Vol. 3, N.T. 801:19-802:12.

The record also supports the HO's conclusion that this failure to modify, combined with Nazareth's failure to consistently model and use the AAC device constituted a denial of an FAPE.  C.B.'s communication skills were at a deficit during the 2021-22 school year which only widened in the 2022-23 school year.  The AAC device addressed this deficit but was not properly or consistently utilized.  While the device was generally available, the record reflects that it was not consistently modeled throughout the day.  HO FOF ¶ 15; Transcript Vol. 1, N.T. 228:15-229:17.  For the AAC device to be effective, its use and modeling needed to be consistent across all aspects of his communication, be that home, school, or social.  HO FOF ¶ 9; Transcript

Vol. 3, N.T. 293:18-294:10. Nazareth's failure to appropriately program the use of the AAC

device was a broken link in that chain. This failure became apparent as C.B.'s academic progress

devolved, and his inappropriate behaviors increased as a result of his inability to communicate.

The HO found, and this Court agrees, that these flaws in the programming constituted a denial of

C.B.'s FAPE.

### C.    Accumulation of Errors and Due Process

Third and finally, Nazareth argues that the HO's accumulation of errors constitutes

reversible error. Specifically, Nazareth argues that the HO erred by: 1) misunderstanding the

nature of an FBA; 2) being "dismissive" and inappropriately feeling the need to "negatively

comment" on a progress chart; 3) being again dismissive of the "concerns and judgments of

school professionals"; and 4) making legal errors in reaching her decision. Def. Mot. at 15-19.

This argument appears to allege a due process violation in that Nazareth argues the sum of these

errors "demonstrate bias" against the school. Def.'s Mot. at 3.

To be certain, "the IDEA guarantees an impartial due process hearing." *J.N. v. S. W. Sch.*

*Dist.*, 55 F. Supp. 3d 589, 603 (M.D. Pa. 2014). Since the HO is presumed to be impartial, it is

the burden of the party asserting bias to show actual bias or likelihood of bias. *Yulia S. v.*

*Hatboro-Horsham Sch. Dist.*, No. 2:21-CV-02011-JDW, 2021 WL 5298990 at * 4 (E.D. Pa.

Nov. 15, 2021). Having reviewed the record, the Court finds that Nazareth has failed to meet its

burden.

First, the HO did not make legal errors. Second, with regard to the factual errors,

Nazareth does not explain how *these assertions* infect the HO's decision that C.B. was denied an

FAPE. This Court's analysis has upheld that finding under the modified de novo standard that is

accorded the HO's factual findings. *A.B. ex rel. Susan B. v. Montgomery Cnty. Intermediate*

*Unit*, 409 F. App'x 602, 603 (3d Cir. 2011) (holding, in response to a due process argument, that

there was no error where the factual record supplies an independent basis for the HO's decision.)

Accordingly, Nazareth's third argument is overruled.

### D.    Compensatory Education & Attorneys' Fees

As the prevailing party, Plaintiffs seek enforcement of the HO's compensatory education

award as well as reimbursement of reasonable costs and attorneys' fees.

#### 1.    Compensatory Education

Having found that Nazareth denied C.B. an FAPE, the HO awarded compensatory

education.  Plaintiffs seek to enforce this part of the award.

In resolving such disputes, the IDEA empowers the Court to "grant such relief as the

court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  "The relief granted by courts

under section 1415(i)(2)(C)(iii) is primarily compensatory education."  *Ferren C. v. Sch. Dist. of*

*Philadelphia*, 612 F.3d 712, 717 (3d Cir. 2010).  "[C]ompensatory education serves to 'replace

educational services the child should have received in the first place' and . . . 'should aim to

place disabled children in the same position they would have occupied but for the school

district's violations of IDEA.'"  *Id.* at 717-18 (quoting *Reid v. District of Columbia*, 401 F.3d

516, 518 (D.C.Cir.2005)) (cleaned up).

The HO's award of compensatory education differentiated between the 2021-22 and

2022-23 school years.  For the 2021-22 school year, the HO awarded one hour per day of

compensatory education for each day the school was in session beginning[4] on the 31st school

day.  For the 2022-23 school year, the HO awarded full days of compensatory education

---

[4]    Nazareth must be afforded a reasonable amount of time to rectify the problem once it
arises. *See M.C.*, 81 F.3d at 397.

beginning on the 31st school day and ending on May 10, 2023, when the child was disenrolled. Claims for compensatory education are subject to plenary review as a conclusion of law. *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009).

The difference in award between the school years reflects the difference in impact Nazareth's failure had on C.B.'s education programming and the "period of deprivation" it caused. *See M.C. on Behalf of J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996). During the 2021-22 school year, C.B. made significant progress on his IEP goals notwithstanding the flaws in Nazareth's programming. Thus, the HO awarded only one hour of compensatory education a day. However, during the 2022-23 school year, C.B.'s academic and behavioral difficulties, which were caused by his inadequately addressed communication deficit, were far more severe and "pervaded [his] entire school day." HO at 31. Accordingly, the HO found, and this Court agrees, that full days of compensatory education were warranted. *See R.B. v. Downingtown Area Sch. Dist.*, 509 F. Supp. 3d 339, 349 (E.D. Pa. 2020) (reasoning that "there are also cases in which a denial of FAPE creates a harm that permeates the entirety of a student's school day" and warrants the full days of compensatory education.)

        2.     Attorneys' Fees

Plaintiffs appeal to the Court's discretion, seeking an award of reasonable attorneys' fees as the prevailing parties. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I). Plaintiffs also seek leave to brief this issue separately. The Court grants that request.

## V.  CONCLUSION

For the above noted reasons, the Court denies Nazareth's Motion for Judgment on the Administrative Record and grants Plaintiffs' Motion.

An appropriate Order follows.

                                                    BY THE COURT:


                                                    */s/ Joseph F. Leeson, Jr.*
                                                    JOSEPH F. LEESON, JR.
                                                    United States District Judge